IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 18, 2020 Session

## IN RE KAYLEIGH B. ET AL.

**Appeal from the Juvenile Court for Blount County**
**No. 33056, 33057, 33058, 33059    Kenlyn Foster, Judge**

_____

## No. E2019-01153-COA-R3-PT

_____

Jennifer G. ("Mother") and Brian B. ("Father") appeal the termination of their parental rights to their minor children, Kayleigh B., Layla B., Isaiah B., and Ja'Nyla B. (collectively, "the Children"). In March 2018, the Tennessee Department of Children's Services ("DCS") filed a petition to terminate the parents' rights to the Children in the Blount County Juvenile Court ("Juvenile Court"). Following a hearing in May 2019, the Juvenile Court terminated Mother's parental rights based on the statutory grounds of abandonment by failure to provide a suitable home, abandonment by wanton disregard, abandonment by failure to support prior to her incarceration, substantial noncompliance with the permanency plan, and persistent conditions. The Juvenile Court also terminated Father's parental rights on the statutory grounds of abandonment by failure to support prior to the petition's filing and substantial noncompliance with the permanency plan. The Juvenile Court further found that termination of Mother's and Father's parental rights was in the Children's best interest. Both Mother and Father timely appealed. We reverse the statutory ground of abandonment by failure to support concerning Mother's parental rights. We affirm the Juvenile Court's judgment in all other respects including the termination of Mother's and Father's parental rights.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Affirmed as Modified; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

Grae A. Hinds, Knoxville, Tennessee, for the appellant, Jennifer G.

James E. Corcoran, III, Knoxville, Tennessee, for the appellant, Brian B.

Herbert H. Slatery, III, Attorney General and Reporter, and Jeffrey D. Ridner, Assistant Attorney General, for the appellee, the Tennessee Department of Children's Services.

# OPINION

## Background

The Tennessee Department of Children's Services ("DCS") became involved with Mother, Father, and the Children in July 2016.[1]  In July 2016, DCS developed non-custodial permanency plans with the Mother attempting to prevent removal of the Children from Mother's custody.  On September 8, 2016, the Juvenile Court removed the Children from Mother's custody and placed the Children in the custody of DCS.  At that time, Mother did not have appropriate housing and Father was incarcerated.

DCS developed a permanency plan for the Children in October 2016 with dual goals of Return to Parent and Exit Custody with Relative.  As to Mother, the permanency plan required that Mother (1) pay child support, (2) participate in individual therapy, (3) cooperate with random drug screening, (4) participate in family therapy as recommended, (5) take her prescriptions as prescribed, (6) complete a parenting assessment and follow all recommendations, (7) attend the Children's appointments to understand their needs, (8) obtain and maintain appropriate housing for the Children, (9) obtain and maintain a legal source of income, (10) develop a transportation plan to get the Children to school and to their appointments, and (11) identify relatives who could be a potential placement for the Children.  Mother signed the signature page of the permanency plan.

The October 2016 permanency plan required Father to (1) pay child support, (2) complete a mental health assessment and follow all recommendations, (3) participate in family therapy as recommended, (4) take his prescriptions as prescribed, (5) complete parenting classes, (6) attend the Children's appointments to understand their needs when he is released from prison, (7) obtain and maintain appropriate housing and a legal source of income following his release from prison, (8) refrain from incurring new criminal charges, (9) comply with the terms of his probation, (10) develop a transportation plan to get the Children to school and to their appointments, and (11) identify relatives who could be a potential placement for the Children.  The permanency plan reflects that Father participated in development of the plan by telephone.

DCS also provided Mother with a copy of the "Criteria & Procedures for Termination of Parental Rights," and Ms. Swaney explained the contents to both Mother and Father in October 2016.  The Juvenile Court entered an order in November 2016, approving the requirements of the October 2016 permanency plan as being reasonably related to remedying the reasons for foster care and finding the requirements to be in the

---

[1] The DCS case and subsequent court action also involved the Children's sibling, Mikayla G., who was placed into the custody of a relative.  She is not part of the termination of parental rights proceedings.

Children's best interest. Mother appeared for the hearing and was represented by counsel. As to Father, the order reflects that he "did not have notice or whereabouts unknown."

At the adjudicatory hearing in November 2016, Mother stipulated that the Children were dependent and neglected and that Mother's housing was inappropriate at the time of the removal. Father was still incarcerated at the time of the hearing concerning Mother. Father was released from prison in March 2017. Following his release from prison, the Court conducted an adjudicatory hearing adverse to Father in August 2017, wherein Father stipulated that the Children were dependent and neglected and that Father had been incarcerated at the time of the removal.

DCS developed a second permanency plan in March 2017 with dual goals of Return to Parent and Adoption. The second plan contained the same requirements as the first plan but provided the following additional requirements: (1) Mother and Father will participate in random drugs screens, (2) Mother will submit to an alcohol and drug assessment and follow the recommendations, and (3) Mother will not incur new criminal charges. This plan removed the requirement that the parents would identify relatives as potential placements for the Children. The plan reflects that Father participated in the development of the plan via telephone and that Mother's attorney was present during the development of the plan. Ms. Swaney also explained the "Criteria & Procedures for Termination of Parental Rights" to Father in March 2017. The Juvenile Court approved the second permanency plan in April 2017, finding that the requirements of the plan were reasonably related to remedying the reasons for foster care and in the Children's best interest. Father appeared at that hearing and was represented by counsel. The order reflects that Father did not agree with the plan due to the goal of adoption included. During that hearing, the order states that the Juvenile Court explained to Father his duty to visit and support the Children.

DCS developed a third permanency plan in September 2017. The plan reflects that Father participated by telephone in the development of this plan. Both parents' counsel participated in the meeting. The third permanency plan included the same goals and requirements as the previous plan but reflected that Mother had completed an alcohol and drug assessment but still needed to comply with follow-up classes, that Mother had completed her parenting assessment and was currently participating in parenting sessions, and that Father had completed parenting classes. The Juvenile Court approved the third plan in December 2017. Neither Mother nor Father were present for this hearing but were represented by counsel. The Juvenile Court's order reflects that Mother was incarcerated in Knox County at the time of the hearing. The Juvenile Court approved the requirements of the permanency plan as being reasonably related to remedying the reasons for foster care and in the Children's best interest. The Juvenile Court also modified the requirements of the plan to include two additional requirements: (1) Father

and his paramour would comply with a hair follicle drug screen within thirty days and (2) Mother would complete a mental health assessment.

DCS subsequently developed a fourth permanency plan in March 2018 with a sole goal of Adoption, which the Juvenile Court approved, and filed a petition to terminate Mother's and Father's parental rights to the Children on March 16, 2018. An initial setting for the termination petition was scheduled for May 2018. The order from the initial setting reflects that both parents had been served with process and had appeared at the hearing. Both parents had been appointed counsel, and they also were present for the hearing. At that initial setting, the Juvenile Court scheduled the termination trial for September 10, 2018.

An order of continuance was entered on September 17, 2018, continuing the termination trial until January 7, 2019. Father's attorney requested a continuance for the January 7, 2019 trial date due to a family emergency, and the trial was rescheduled for February 19, 2019. The Juvenile Court subsequently entered an order continuing the trial until May 2, 2019. The Juvenile Court's February 21, 2019 order reads as follows: "There being good cause shown or by agreement of the parties, it is hereby ORDERED that this matter, currently set for **Trial** hearing on **February 19, 2019** shall be CONTINUED until **May 2, 2019** at **1:30pm** at the Blount County Juvenile Court in Maryville, Tennessee."

The Juvenile Court conducted a trial on May 2, 2019, concerning DCS's termination petition. Neither Mother nor Father appeared for the termination trial, but the Juvenile Court found that they had both been provided with sufficient service and notice. Father's counsel appeared and represented Father during the trial. Mother's counsel was also present to represent Mother's interests during trial. Kelly Swaney, the DCS case manager, was the only witness at trial. DCS admitted as exhibits during trial the court records from the dependency and neglect proceeding and Mother's criminal history. The criminal history records reflect that Mother was arrested for and pled guilty to Shoplifting in November 2016. Mother was arrested for Driving Under the Influence in December 2016. Mother subsequently pled guilty to Driving Under the Influence in September 2017 and was sentenced to supervised probation. Mother was arrested in November 2017 for Possession with Intent to Sell Methamphetamine and subsequently pled guilty in February 2018. Mother was sentenced to six years supervised probation as a result of this conviction.

Following trial, the Juvenile Court entered an order in June 2019 with the following findings of fact and conclusions of law:

## ABANDONMENT - FAILURE TO SUPPORT
### T.C.A. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(I), -102(1)(C) and -102(1)(E)

The Petition to Terminate Parental Rights was filed on March 16, 2018. By the Court's calculation, four months prior to the filing of the petition would commence on or about November 15, 2017. CM Swaney testified that during the four months just prior to the filing of the Petition to Terminate Parental Rights, [Father] was full-time employed at Even Cut Landscaping. CM Swaney also testified that [Father] signed the Criteria and Procedures for Termination of Parental Rights, that she explained the document to him, and that he understood the document. She also testified that he did not pay any child support between November 15, 2017 and March 15, 2018.

The Court finds by clear and convincing evidence the ground of Abandonment, Failure to Support has been proven by DCS. Specifically the Court finds that (a) [Father] was employed with a landscaping service, working 40 hours per week, making $11.00 per hour. He got a raise to $12.00 per hour; (b) he was ordered to pay $100.00 per month in child support for all four children; (c) [Father] has not made any payments towards his child support and CM Swaney verified that with the child support division; [(d)] he signed the Criteria and Procedures for Termination of Parental Rights so he was aware of his duty to support the children.

## ABANDONMENT - FAILURE TO PROVIDE SUITABLE HOME
### T.C.A. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(ii)

CM Swaney testified that the children were placed into DCS custody due to [Mother's] homelessness. On January 3, 2017, the children had been in DCS custody for 4 months. Between the times the children came into DCS custody and January 3, 2017, [Mother] did not exert any effort to secure a suitable home for her children. CM Swaney testified that she provided [Mother] with a resource guide and discussed housing and programs that she could get into, but [Mother] was unwilling to take advantage of those resources.

CM Swaney testified that she sat with [Mother] to make appointments for housing options, but [Mother] was not interested. CM Swaney testified that [Mother] told her on several occasions that she would not leave the home where she was living despite it being an unsafe environment for the children.

The Court finds by clear and convincing evidence the ground of Abandonment, Failure to Provide a Suitable Home has been proven by DCS. Specifically the Court finds: (a) the children were removed from [Mother] because of homelessness; (b) that prior to the filing of the petition, the Department has been working with the family on addressing housing issues; (c) [Mother] reported consistently over the life of the case that she was living in an environment that was unsafe for the children; (d) that despite assistance from CM Swaney such as sitting down with [Mother], offering her options for shelters and help with subsidized housing, that [Mother] made no effort to remedy this major barrier to reunification; (e) that [Mother] has continued to incur criminal charges since the children have come into DCS custody.

## ABANDONMENT BY INCARCERATED PARENT
### T.C.A. §§ 36-1-113(g)(1) and 36-1-102(1)(A)(iv), -102 (1)(C) and -102(1)(E)

DCS Case Manager Kelly Swaney testified that during the four months just prior to filing the Petition to Terminate Parental Rights (on March 16, 2018), [Mother] was incarcerated in the Knox County Jail. CM Swaney also testified that [Mother] was incarcerated from August 18, 2017 to September 6, 2017. She testified that during the 4 months prior to her incarceration, [Mother] did not pay any child support and did not visit the children consistently.

Numerous exhibits were received into evidence showing [Mother's] criminal convictions and incarceration during the relevant months. [Mother] was convicted of shoplifting, Driving Under the Influence, and possession with intent to sell Methamphetamine less than 0.5 grams.

The Court finds by clear and convincing evidence the ground of Abandonment by Incarcerated Parent has been proven by DCS. Specifically, the Court finds that (a) [Mother] was incarcerated during the four months immediately preceding the filing of the Petition to terminate parental rights, [(b)] [Mother] failed to support the children during the four months preceding her incarceration, and (c) [Mother] exhibited a wanton disregard for the wellbeing of the children by continuing to engage in criminal behavior.

## SUBSTANTIAL NONCOMPLIANCE WITH PERMANENCY PLAN
### *T.C.A. §§ 36-1-113(g)(2) and 37-2-403(a)(2)*

Substantial compliance with the permanency plan is not compliance with absolutely every step on the permanency plan. The Court is required to determine the most important action step on the plan that would reunify the family, or, put another way, the action step that addresses the reason that gave rise to the removal of the children into foster care.

For [Mother], the children came into DCS custody because she had no suitable housing for the children despite efforts by the Department before the children came into custody to prevent her children from coming into foster care. She was unable to provide housing for them after the children were removed, she still cannot provide suitable housing for them, and after nearly three years in foster care, [Mother] is not in a position to provide housing for them now.

[Mother] completed some of the action steps on her permanency plan. She had an alcohol and drug assessment and a parenting assessment. She did visit, albeit sporadically. However, [Mother] did not obtain a legal source of income sufficient to provide for the needs of the children. She did not provide a transportation plan and she did not provide a suitable home for the children, which was the most important action step on the permanency plan. The Court finds by clear and convincing evidence that [Mother] is in substantial noncompliance with the permanency plan because she did not complete the most important action step on the permanency plan, i.e. to find appropriate housing for the children.

Regarding [Father], the Court finds that he had several action steps on the permanency plan to complete. He was required to have a mental health assessment and follow the recommendations, cooperate with drug screens, take medications as prescribed, and participate in family therapy. The Court finds that the biggest barrier to reunification with [Father] was that the children did not have a relationship with him. He had been incarcerated for most of the children's lives so when he was released from incarceration, he initially made significant progress towards remedying the reunification barriers, but then he stopped complying and he stopped communicating. When CM Swaney asked him to comply with drug screens, he failed to do so.

[Father] did not complete the recommendations from his mental health assessment. He has not made himself available for random drug

screens. He has stopped communicating with CM Swaney. He does not have housing. He did have transportation, but CM Swaney testified that it needed a modification to be able to transport the children. CM Swaney offered to assist him [with] that modification, but he would not follow through. Despite the Department's significant efforts to help [Father] satisfy the requirements of his permanency plan, he has still failed to do so. The Court finds by clear and convincing evidence that [Father] is in substantial noncompliance with his requirements in the permanency plan.

## PERSISTENT CONDITIONS
### T.C.A. §§ 36-1-113(g)(3)

The children were removed from [Mother] because of homelessness. The Court finds that those conditions still persist. There is no appropriate housing of which the Court is aware. The Court does not have any knowledge that [Mother] can meet the needs of the children because she has refused to allow CM Swaney to visit her home to assess it for safety. The Court received uncontroverted evidence that [Mother] does not have transportation. She has not addressed her substance abuse issues, as evidenced by her convictions for DUI first offense and possession with intent to sell Methamphetamine.

The Court finds that there is not just little chance, but that there is no chance that these conditions will be remedied. If [Mother] could not move out of a home with domestic violence that was unsafe for her children in the nearly three years that the children have been in foster care, the Court holds out no hope that she will remedy these conditions at any time. Furthermore, trying to maintain a parent-child relationship between [Mother] and the children greatly diminishes these children's chances of being placed in suitable, safe, permanent homes. The Court finds that the ground of persistent conditions has been met by the Department by clear and convincing evidence.

## BEST INTERESTS

Having found the above grounds by clear and convincing evidence, the Court is required to review whether it is in the children's best interest to terminate the parent[s'] rights and free the children for adoption. The Court finds that the Department has demonstrated by clear and convincing evidence that termination is in the best interest of the children.

[Father] and [Mother] have made no lasting changes to their lifestyle that would allow the children to be safely returned to their homes.

[Mother] refused to leave an environment that was unsafe for her children. The Department provided significant services to the family to assist in resolving these issues and [Mother] has not made those changes.

There has not been regular visitation between [Father] and the children. The visitation between [Mother] and the children has been sporadic at best. The children have been in foster care for nearly three years. Changing caregivers at this stage of the proceeding would be detrimental to their psychological welfare and emotional state.

There continues to be drug use and criminal activity by [Mother], and neither [Father] nor [Mother] have paid child support consistent with the guideline. Therefore, the Court finds by clear and convincing evidence that it is in the best interest of these children for the parental rights of [Mother] and [Father] to be terminated and for the children to be freed for adoption.

(Internal citations omitted.)

The Juvenile Court terminated Mother's rights on the statutory grounds of abandonment by failure to provide a suitable home, abandonment by wanton disregard, abandonment by failure to support prior to her incarceration, substantial noncompliance with the permanency plan, and persistent conditions and terminated Father's parental rights on the statutory grounds of abandonment by failure to support prior to the petition's filing and substantial noncompliance with the permanency plan. The Juvenile Court further found that termination of Mother's and Father's parental rights was in the Children's best interest. Both Mother and Father timely filed notices of appeal to this Court.

**Discussion**

Although not stated exactly as such, Mother raises one issue for our review: whether the evidence presented supports the Juvenile Court's finding by clear and convincing evidence that termination of Mother's parental rights was in the Children's best interest. Father raises five additional issues for our review: (1) whether Father was provided a fundamentally fair proceeding, including notice and an opportunity to be heard, (2) whether the Juvenile Court erred by finding by clear and convincing evidence that Father had abandoned the Children by failing to support them, (3) whether the Juvenile Court erred by finding by clear and convincing evidence that Father had failed to substantially comply with the requirements of the permanency plan, (4) whether Tennessee's procedure for appointing attorneys to represent parents in termination of parental rights proceedings provides "sufficient guarantees" that the parent will receive a

fundamentally fair proceeding, and (5) whether termination of Father's parental rights was in the Children's best interest.

With regard to the termination of parental rights, our Supreme Court has instructed:

> A parent's right to the care and custody of her child is among the oldest of the judicially recognized fundamental liberty interests protected by the Due Process Clauses of the federal and state constitutions.[2] *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L. Ed.2d 49 (2000); *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L. Ed.2d 551 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *In re Adoption of Female Child*, 896 S.W.2d 546, 547-48 (Tenn. 1995); *Hawk v. Hawk*, 855 S.W.2d 573, 578-79 (Tenn. 1993). But parental rights, although fundamental and constitutionally protected, are not absolute. *In re Angela E.*, 303 S.W.3d at 250. "'[T]he [S]tate as *parens patriae* has a special duty to protect minors . . . .' Tennessee law, thus, upholds the [S]tate's authority as *parens patriae* when interference with parenting is necessary to prevent serious harm to a child." *Hawk*, 855 S.W.2d at 580 (quoting *In re Hamilton*, 657 S.W.2d 425, 429 (Tenn. Ct. App. 1983)); *see also Santosky v. Kramer*, 455 U.S. 745, 747, 102 S. Ct. 1388, 71 L. Ed.2d 599 (1982); *In re Angela E.*, 303 S.W.3d at 250. "When the State initiates a parental rights termination proceeding, it seeks not merely to infringe that fundamental liberty interest, but to end it." *Santosky*, 455 U.S. at 759, 102 S. Ct. 1388. ["]Few consequences of judicial action are so grave as the severance of natural family ties." *Id.* at 787, 102 S. Ct. 1388; *see also M.L.B. v. S.L.J.*, 519 U.S. 102, 119, 117 S. Ct. 555, 136 L. Ed.2d 473 (1996). The parental rights at stake are ["]far more precious than any property right." *Santosky*, 455 U.S. at 758-59 102 S. Ct. 1388. Termination of parental rights has the legal effect of reducing the parent to the role of a complete stranger and of ["]severing forever all legal rights and obligations of the parent or guardian of the child." Tenn. Code Ann. § 36-1-113(l)(1); *see also Santosky*, 455 U.S. at 759, 102 S. Ct. 1388 (recognizing that a decision terminating parental rights is ["]*final* and irrevocable"). In light of the interests and consequences at stake, parents are constitutionally entitled to ["]fundamentally fair procedures" in termination proceedings. *Santosky*, 455 U.S. at 754, 102 S. Ct. 1388; *see also Lassiter v. Dep't of Soc. Servs. of Durham Cnty., N.C.*, 452 U.S. 18, 27, 101 S. Ct. 2153, 68 L. Ed.2d 640

---

[2] U.S. Const. amend. XIV § 1 ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law . . . ."). Similarly, article 1, section 8 of the Tennessee Constitution states "[t]hat no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land."

(1981) (discussing the due process right of parents to fundamentally fair procedures).

Among the constitutionally mandated ["]fundamentally fair procedures" is a heightened standard of proof – clear and convincing evidence. *Santosky*, 455 U.S. at 769, 102 S. Ct. 1388. This standard minimizes the risk of unnecessary or erroneous governmental interference with fundamental parental rights. *Id.*; *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010). ["]Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, and eliminates any serious or substantial doubt about the correctness of these factual findings." *In re Bernard T.*, 319 S.W.3d at 596 (citations omitted). The clear-and-convincing-evidence standard ensures that the facts are established as highly probable, rather than as simply more probable than not. *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005); *In re M.A.R.*, 183 S.W.3d 652, 660 (Tenn. Ct. App. 2005).

Tennessee statutes governing parental termination proceedings incorporate this constitutionally mandated standard of proof. Tennessee Code Annotated section 36-1113[sic](c) provides:

> Termination of parental or guardianship rights must be based upon:
>
> (1) A finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and
> (2) That termination of the parent's or guardian's rights is in the best interests of the child.

This statute requires the State to establish by clear and convincing proof that at least one of the enumerated statutory grounds[3] for termination exists and that termination is in the child's best interests. *In re Angela E.*, 303 S.W.3d at 250; *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). "The best interests analysis is separate from and subsequent to the determination that there is clear and convincing evidence of grounds for termination." *In re Angela E.*, 303 S.W.3d at 254. Although several factors relevant to the best interests analysis are statutorily enumerated,[4] the list is illustrative, not exclusive. The parties are free to offer proof of other relevant factors. *In re Audrey S.*,

---

[3] Tenn. Code Ann. § 36-1-113(g)(1)-(13).
[4] Tenn. Code Ann. § 36-1-113(i).

- 11 -

182 S.W.3d at 878. The trial court must then determine whether the combined weight of the facts "amount[s] to clear and convincing evidence that termination is in the child's best interest." *In re Kaliyah S.*, 455 S.W.3d 533, 555 (Tenn. 2015). These requirements ensure that each parent receives the constitutionally required "individualized determination that a parent is either unfit or will cause substantial harm to his or her child before the fundamental right to the care and custody of the child can be taken away." *In re Swanson*, 2 S.W.3d 180, 188 (Tenn. 1999).

Furthermore, other statutes impose certain requirements upon trial courts hearing termination petitions. A trial court must "ensure that the hearing on the petition takes place within six (6) months of the date that the petition is filed, unless the court determines an extension is in the best interests of the child." Tenn. Code Ann. § 36-1113[sic](k). A trial court must "enter an order that makes specific findings of fact and conclusions of law within thirty (30) days of the conclusion of the hearing." *Id*. This portion of the statute requires a trial court to make "findings of fact and conclusions of law as to whether clear and convincing evidence establishes the existence of each of the grounds asserted for terminating [parental] rights." *In re Angela E.*, 303 S.W.3d at 255. "Should the trial court conclude that clear and convincing evidence of ground(s) for termination does exist, then the trial court must also make a written finding whether clear and convincing evidence establishes that termination of [parental] rights is in the [child's] best interests." *Id*. If the trial court's best interests analysis "is based on additional factual findings besides the ones made in conjunction with the grounds for termination, the trial court must also include these findings in the written order." *Id*. Appellate courts "may not conduct de novo review of the termination decision in the absence of such findings." *Id*. (citing *Adoption Place, Inc. v. Doe*, 273 S.W.3d 142, 151 & n.15 (Tenn. Ct. App. 2007)).

### B. Standards of Appellate Review

An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). *In re Bernard T.*, 319 S.W.3d at 596; *In re Angela E.*, 303 S.W.3d at 246. Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. *In re Bernard T.*, 319 S.W.3d at 596; *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007). In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by

- 12 -

the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. *In re Bernard T.*, 319 S.W.3d at 596-97. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. *In re M.L.P.*, 281 S.W.3d at 393 (quoting *In re Adoption of A.M.H.*, 215 S.W.3d at 810). Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness. *In re Angela E.*, 303 S.W.3d at 246.

*In re Carrington H.*, 483 S.W.3d 507, 521-24 (Tenn. 2016) (footnotes in original but renumbered).

We first address Father's issue of whether he received a fundamentally fair trial. Father argues that he did not receive a fundamentally fair proceeding, "including notice and an opportunity to be heard." Upon a review of the record, we note that Father's counsel was present at the termination proceedings and that counsel did not request a continuance on Father's behalf. As such, we find and hold that Father waived the issue of notice for purposes of the appeal.

Additionally, Father essentially argues that due to ineffective assistance of trial counsel, Father was deprived of a fundamentally fair proceeding. The Tennessee Supreme Court has held as follows: "[W]e decline to hold that securing the constitutional right of parents to fundamentally fair procedures requires adoption of an additional procedure, subsequent to or separate from an appeal as of right, by which parents may attack the judgment terminating parental rights based upon ineffective assistance of appointed counsel." *In re Carrington H.*, 483 S.W.3d 507, 535 (Tenn. 2016). Following *In re Carrington H.*, it is somewhat unclear whether ineffective assistance of counsel is an avenue for appeal during an appeal as of right pursuant to Tennessee Rule of Appellate Procedure 3. *See In re LaiLonnii J.*, No. E2018-01198-COA-R3-PT, 2019 WL 669758, at *10-11 (Tenn. Ct. App. Feb. 19, 2019) (determining that, pursuant to *In re Carrington H.*, "there is no right to effective assistance of counsel in parental termination cases" but that the parent was entitled to fundamentally fair procedures); *In re Brianna T.*, No. E2017-01132-COA-R3-PT, 2017 WL 6550621, at *4 n.4 (Tenn. Ct. App. Dec. 22, 2017) (interpreting the Tennessee Supreme Court's holding in *In re Carrington H.* to stand for the proposition that "an indigent parent's right to appointed counsel in termination of parental rights cases does not include the right to challenge an order terminating parental rights based on ineffective assistance of counsel"); *In re Hailey C.*, No. M2016-00818-COA-R3-PT, 2017 WL 4331039, at *5 (Tenn. Ct. App. Sept. 28, 2017) (declining to address the parent's argument of ineffective assistance of counsel during the termination trial based upon its interpretation of the holding in *In re Carrington H.* that "a parent has no such right in Tennessee"); *In re Karissa V.*, No.

- 13 -

E2016-00395-COA-R3-PT, 2017 WL 758513, at *12-13 (Tenn. Ct. App. Feb. 27, 2017) (finding a parent's argument that "she is entitled to relief because her counsel was ineffective" to be unavailing and explaining the Supreme Court's decision in *In re Carrington H.* to hold that "there is no mechanism to seek relief based upon alleged ineffective assistance of counsel in parental termination cases," but parents are entitled to fundamentally fair procedures).

Upon our review of the Supreme Court's decision in *In re Carrington H.*, 483 S.W.3d 507 (Tenn. 2016), we note that the Court did not specifically hold that a parent may or may not raise ineffective assistance of counsel on direct appeals. Instead the Court held that the "adoption of an additional procedure, *subsequent to or separate from an appeal as of right* (emphasis added)" by which the parent may attack the termination judgment based upon an alleged ineffective assistance of counsel is not required to provide the parent with fundamentally fair procedures. The issue of whether a parent in a termination of parental rights action may raise ineffective assistance of counsel on direct appeal is a question that should be settled by our Supreme Court.

We further note, however, that the Supreme Court in *In re Carrington H.* analyzed on direct appeal a parent's claim of ineffective assistance of counsel by determining whether the actions of counsel prevented the parent from receiving a fundamentally fair proceeding. *See id.* at 535-536. As such, we will address on appeal whether the representation of Father by appointed trial counsel deprived Father of a fundamentally fair proceeding.

Father argues that his appointed trial counsel made several errors during trial. First, Father argues that his trial counsel failed to request a continuance when Father was not present for the trial. We note that counsel's absence of a continuance request when Father was not present could have been a strategic decision between Father and counsel to prevent Father from being called as a witness during trial by DCS. It is not unreasonable that trial counsel proceeding in Father's absence was a strategic decision that counsel believed would not hurt and might help Father's case. Additionally, if Father's absence from trial was not a strategic decision by trial counsel, Father must accept the responsibility for his absence. As such, we determine that the fact that Father's counsel did not request a continuance in this action did not deny Father a fundamentally fair proceeding.

Father also assigns blame to his appointed counsel for not filing an answer to DCS's termination petition. However, we note that an answer is not required to be filed in response to a termination of parental rights petition. *See* Tenn. R. Civ. P. 8.04 (requires allegations in parental termination actions to be proven even if not denied in a responsive pleading). Furthermore, by declining to file an answer, Father's counsel "avoided admitting or denying each allegation of the petition," which could have been

- 14 -

beneficial to Father, "but which was, in any event, a reasonable choice." *See In re Carrington H.*, 483 S.W.3d at 536.

Father also avers that trial counsel made other errors by declining to make an opening statement, not making specific arguments on the behalf of Father, not objecting to certain testimony or admission of evidence, and not eliciting certain testimony during trial. These choices by counsel may well have been strategic decisions by counsel seeking to best represent Father's interests. Upon review of the record, we note that counsel elicited testimony from Ms. Swaney concerning a clean hair follicle drug screen by Father and Father's progression from supervised visitation to unsupervised visitation, both of which were beneficial to his cause. Counsel further argued on Father's behalf during closing arguments that DCS had not met its burden of proof to terminate Father's parental rights to the Children. Father's counsel made arguments that the proof presented was not sufficient to support that Father had not supported the Children, pointed out the steps Father had completed on the permanency plans, and argued that termination of Father's parental rights was not in the Children's best interest. Furthermore, Father has failed to establish how counsel's alleged errors during trial deprived him of a fundamentally fair proceeding. Upon review of the record, we find and hold that Father's appointed counsel's representation did not deprive him of a fundamentally fair proceeding.

Additionally, Father argues that Tennessee's process of appointing attorneys to represent parents in parental termination actions does not "provide sufficient guarantees" that a parent will receive a fundamentally fair proceeding. According to Father, "there are no qualifications" for appointed attorneys in Tennessee representing parents in termination of parental rights proceedings. Counsel proceeds to compare the requirements for counsel in death penalty criminal actions to the lack of "qualifications" for termination of parental rights actions and argues that "some minimum standards" are necessary in termination of parental rights cases. We find Father's argument that Tennessee's entire attorney appointment procedure for indigent parents in termination proceedings does not "provide sufficient guarantees" that a parent will receive a fundamentally fair proceeding to be unavailing. Furthermore, we lack the authority to amend Tennessee Supreme Court Rule 13 to include minimum qualifications for appointed attorneys in termination proceedings. Therefore, we find this issue to be without merit.

We next address Father's issue concerning the statutory ground of abandonment by failure to support. Concerning this ground, Tennessee Code Annotated § 36-1-102(1)(A)(i) (2017) provides:

> For a period of four (4) consecutive months immediately preceding the filing of a proceeding, pleading, petition, or any amended petition to terminate the parental rights of the parent or parents or the guardian or

guardians of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents or the guardian or guardians . . . have failed to support or have failed to make reasonable payments toward the support of the child;

The petition was filed on March 16, 2018. The Juvenile Court found in its order that the relevant four-month period began on November 15, 2017. While we note that the correct four-month period extended from November 16, 2017, through March 15, 2018, it makes no difference in our analysis.

As relevant to this ground, Father argues that the Juvenile Court erred by relying on evidence that was hearsay. However, there was no objection to admission of the evidence at trial. Therefore, we find that Father waived this issue on appeal because it was not raised in the proceedings below. *See Black v. Blount*, 938 S.W.2d 394, 403 (Tenn. 1996) ("Under Tennessee law, issues raised for the first time on appeal are waived.").

Father further argues that the Juvenile Court did not specifically find Father's failure to support to be willful. This Court has held that "'[f]ailure to support a child is 'willful' when a person is aware of his or her duty to support, has the capacity to provide the support, makes no attempt to provide support, and has no justifiable excuse for not providing the support.'" *In re M.L.D.*, 182 S.W.3d 890, 896 (Tenn. Ct. App. 2005) (quoting *In re Adoption of T.A.M.*, No. M2003-02247-COA-R3-PT, 2004 WL 1085228, at *4 (Tenn. Ct. App. May 12, 2004)). As relevant to the issue of willfulness, the Juvenile Court specifically found that Father knew of his responsibility to support the Children and, as relevant to his ability to support, that he was employed full time during the four-month period, earning $11-12 per hour. The Juvenile Court further found that Father had failed to provide any financial support for the Children during the relevant four-month period and that DCS had proven the ground of abandonment by failure to support by clear and convincing evidence. Although not specifically using the word "willful," the Juvenile Court's findings concerning Father's ability and knowledge clearly and convincingly support that Father's failure to support the Children was willful. We find Father's argument in this regard to be without merit.

Father further argues that he was hospitalized for three weeks during the relevant four-month period, and therefore, his failure to support was not willful. The case manager testified that Father was employed full time during the relevant four-month period. According to Ms. Swaney, Father had informed her that he had been admitted to the hospital but she was unaware of the timeframe. Father indicated to her that he had been in the hospital for a while but she was unaware how long. An affidavit by Ms. Swaney admitted as an exhibit during trial reflects that Father informed her during a phone call in late February 2018 that he had been hospitalized for three weeks for an infection in his leg. The affidavit does not specify the dates of Father's hospitalization.

The Juvenile Court found that Father was employed full time at a landscaping company making $11.00 per hour and had gotten a raise to $12.00 per hour. Father had been ordered to pay $100 per month in child support for the Children, $25 per child per month. The Juvenile Court found that Father was aware of his duty to support the Children, was employed full time, and had not made any payments toward the Children's support. Even if Father had been hospitalized for three weeks in February 2018, this does not explain why Father had not provided any support for the Children prior to his hospitalization during the beginning and the remainder of the four-month period. The evidence presented does not preponderate against the Juvenile Court's factual findings concerning Father's abandonment of the Children by failing to support them. As such, we find by clear and convincing evidence and hold, as did the Juvenile Court, that Father abandoned the Children by failing to provide financial support for them.

We next address Father's issue concerning substantial noncompliance with the permanency plans. As to this ground, Tennessee Code Annotated § 36-1-113(g)(2) (Supp. 2019) provides as a statutory ground for termination of parental rights as follows:

> There has been substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan pursuant to title 37, chapter 2, part 4[.]

Throughout the time the Children were in DCS custody, the requirements of the court-approved permanency plans required Father to (1) pay child support, (2) complete a mental health assessment and follow all recommendations, (3) participate in family therapy as recommended, (4) take his prescriptions as prescribed, (5) complete parenting classes, (6) attend the Children's appointments to understand their needs when he is released from prison, (7) obtain and maintain appropriate housing and a legal source of income following his release from prison, (8) refrain from incurring new criminal charges, (9) comply with the terms of his probation, (10) develop a transportation plan to get the Children to school and to their appointments, (11) identify relatives who could be a potential placement for the Children, (12) participate in random drug screens, and (13) comply with a hair follicle drug screen.

The Juvenile Court found that the largest barrier to reunifying the Children with Father was his lack of a relationship with them. We note, as did the Juvenile Court, that Father made some progress on the requirements of his permanency plan. Father completed parenting classes, gained employment, and complied with a mental health assessment. Although the Juvenile Court found that Father had not complied with the recommendations of his mental health assessment, Ms. Swaney's testimony at trial reflected that Father had complied with the recommended Narcotics Anonymous classes for approximately three months.

The Juvenile Court found that despite Father's initial progress, he had stopped complying and communicating with DCS. Ms. Swaney had been unable to drug screen Father since July 2017. When Ms. Swaney requested that Father appear for a drug screen, Father made excuses that he was unavailable and failed to comply. DCS provided funding for a hair follicle drug screen but Father failed to comply with that drug screen. Father had ceased visitation with the Children and had not visited since November 2017. Father also does not have housing for the Children. Although Father had transportation, he failed to modify his vehicle so that the Children could be safely transported in his vehicle, despite offers of financial assistance from DCS. Upon our review of the record, we find and hold, as did the Juvenile Court, that DCS proved this ground by clear and convincing evidence.

Although Mother does not raise an issue for review concerning the statutory grounds utilized for termination of her parental rights, we will nonetheless review the Juvenile Court's findings concerning each ground as directed by our Supreme Court in *In re Carrington H.*, 483 S.W.3d 507, 525-26 (Tenn. 2016). The first statutory ground concerning Mother that we address is abandonment by failure to provide a suitable home. Concerning this ground, Tennessee Code Annotated § 36-1-102(1)(A)(ii) (2017) provides:

> The child has been removed from the home of the parent or parents or the guardian or guardians as the result of a petition filed in the juvenile court in which the child was found to be a dependent and neglected child, as defined in § 37-1-102, and the child was placed in the custody of the department or a licensed child-placing agency, that the juvenile court found, or the court where the termination of parental rights petition is filed finds, that the department or a licensed child-placing agency made reasonable efforts to prevent removal of the child or that the circumstances of the child's situation prevented reasonable efforts from being made prior to the child's removal; and for a period of four (4) months following the removal, the department or agency has made reasonable efforts to assist the parent or parents or the guardian or guardians to establish a suitable home for the child, but that the parent or parents or the guardian or guardians have made no reasonable efforts to provide a suitable home and have demonstrated a lack of concern for the child to such a degree that it appears unlikely that they will be able to provide a suitable home for the child at an early date. The efforts of the department or agency to assist a parent or guardian in establishing a suitable home for the child may be found to be reasonable if such efforts exceed the efforts of the parent or guardian toward the same goal, when the parent or guardian is aware that the child is in the custody of the department[.]

The Juvenile Court removed the Children from Mother's custody in September 2016 due to Mother's homelessness and found that DCS had attempted to prevent removal from Mother's custody by addressing her housing issues. The Juvenile Court subsequently found the Children to be dependent and neglected. Additionally, the Juvenile Court found that during the four months immediately following the Children's removal, DCS provided reasonable efforts to assist Mother with reunification by providing her with a resource guide, discussing housing options and programs for her but that Mother was unwilling to participate with any of those options. Ms. Swaney testified that Mother had informed her on multiple occasions that she would not leave her home despite the fact that it was an unsafe environment. The Juvenile Court found that despite Ms. Swaney offering Mother housing options, including shelters and assistance with subsidized housing, Mother "made no effort to remedy this major barrier to reunification." Additionally, Mother continued to participate in criminal activity and incur criminal charges while the Children were in DCS custody. We find by clear and convincing evidence and hold, as did the Juvenile Court, that Mother abandoned the Children by failing to provide a suitable home for them.

We next address the statutory ground of abandonment by failure to provide financial support by an incarcerated parent. Concerning this ground, the version of Tennessee Code Annotated § 36-1-102(1)(A)(iv) (2017) in effect at the time of the termination petition's provides in relevant part:

A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and . . . has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration . . . . If the four-month period immediately preceding the institution of the action or the four-month period immediately preceding such parent's incarceration is interrupted by a period or periods of incarceration, and there are not four (4) consecutive months without incarceration immediately preceding either event, a four-month period shall be created by aggregating the shorter periods of nonincarceration beginning with the most recent period of nonincarceration prior to commencement of the action and moving back in time. Periods of incarceration of less than seven (7) days duration shall be counted as periods of nonincarceration. Periods of incarceration not discovered by the petitioner and concealed, denied, or forgotten by the parent shall also be counted as periods of nonincarceration. A finding that the parent has abandoned the child for a defined period in excess of four (4) months that would necessarily include the four (4) months of nonincarceration immediately prior to the institution

of the action, but which does not precisely define the relevant four-month period, shall be sufficient to establish abandonment[.]

Tennessee Code Annotated § 36-1-102(1)(D) provides that a parent must have willfully failed to provide more than token financial support for the child during the relevant four-month period.

Upon review of the Juvenile Court's findings concerning Mother's abandonment of the Children by her failure to provide financial support, we determine that the Juvenile Court's findings did not rise to the level of clear and convincing evidence. We note that the version of this statutory ground in effect at the time of the termination petition's filing required DCS to prove that a parent's failure to support was willful. The Juvenile Court made no such finding as to Mother's willfulness. Additionally, the evidence presented at trial does not support the Juvenile Court's finding that Mother failed to pay financial support. When asked during trial whether Mother paid child support, Ms. Swaney replied, "I do not know. I don't know that there was an order." She also stated, "I don't believe that mom owes anything." Based on the foregoing, we reverse this ground as to Mother.

We next address the statutory ground of abandonment by wanton disregard. As relevant to this ground, Tennessee Code Annotated § 36-1-102(1)(A)(iv) (2017) provides in pertinent part:

> A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and . . . the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child.

Mother was incarcerated during part of the four months prior to the filing of the termination petition. The Children were placed into DCS custody in September 2016 due to Mother's homelessness. Following that time, Mother continued participating in criminal activity. She received a conviction for shoplifting in November 2016. Mother was subsequently arrested for driving under the influence in December 2016, to which she later pled guilty in September 2017. Mother was arrested for possession with intent to sell methamphetamine in November 2017, to which she pled guilty in February 2018.

Based on Mother's criminal activity, the Juvenile Court found that Mother had abandoned the Children by demonstrating wanton disregard for their welfare. This Court has previously held that "probation violations, repeated incarceration, criminal behavior, substance abuse, and the failure to provide adequate support or supervision for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the

welfare of a child." *In re Audrey S.*, 182 S.W.3d 838, 867-68 (Tenn. Ct. App. 2005). We find and hold, as did the Juvenile Court, that DCS proved this ground by clear and convincing evidence.

We next address the statutory ground of substantial noncompliance with the permanency plan requirements. As already stated above, Tennessee Code Annotated § 36-1-113(g)(2) provides as a ground for termination of a parent's rights when "[t]here has been substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan pursuant to title 37, chapter 2, part 4." Pursuant to the court-approved permanency plans, Mother was required to complete the following: (1) pay child support, (2) participate in individual therapy, (3) cooperate with random drug screening, (4) participate in family therapy as recommended, (5) take her prescriptions as prescribed, (6) complete a parenting assessment and follow all recommendations, (7) attend the Children's appointments to understand their needs, (8) obtain and maintain appropriate housing for the Children, (9) obtain and maintain a legal source of income, (10) develop a transportation plan to get the Children to school and to their appointments, (11) identify relatives who could be a potential placement for the Children, (12) comply with random drug screens, (13) submit to an alcohol and drug assessment and follow the recommendations, (14) not incur new criminal charges, and (15) complete a mental health assessment.

As the Juvenile Court acknowledged, Mother had completed some steps on the permanency plan, including completing an alcohol and drug assessment and a parenting assessment. However, Mother had not obtained a legal source of income to support the Children or provided a transportation plan to DCS. Mother also had not provided appropriate housing for the Children, which the Juvenile Court found was the most important action step for Mother to complete on the permanency plans. In fact, Mother had informed Ms. Swaney that she was in an unsafe living situation but was unwilling to leave. Upon reviewing the record, we find by clear and convincing evidence and hold, as did the Juvenile Court, that Mother had not substantially complied with the requirements on the permanency plans, which were reasonably related to the reasons the Children were in foster care and were in the Children's best interest.

We next address whether the Juvenile Court erred in finding by clear and convincing evidence that the conditions leading to the Children's removal from Mother persisted. Although the statute at issue has since been amended, the version of Tennessee Code Annotated § 36-1-113(g)(3) (2017) that was in effect at the time of the termination petition's filing and is applicable to the current proceeding stated as follows:

> The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:

(A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent or parents or the guardian or guardians, still persist;

(B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent or parents or the guardian or guardians in the near future; and

(C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home[.]

In this case, the Children were removed from Mother's custody due to Mother's homelessness. The Court found that Mother still had not obtained suitable housing for the Children. Additionally, the Juvenile Court found that Mother did not have transportation for the Children and had unaddressed substance abuse issues, as evidenced by her convictions for driving under the influence and possession with intent to sell methamphetamine. The Juvenile Court found that the conditions leading to the Children's removal from Mother's custody persist. The Juvenile Court further found that "there is not just little chance, but that there is no chance" that those conditions will be remedied such that the Children could return home to Mother's custody. Furthermore, the Juvenile Court found that continuing the parent-child relationship between Mother and the Children greatly diminished the Children's chances of being placed into safe and permanent homes. The evidence does not preponderate against any of these findings. Upon our review of the record, we determine, as did the Juvenile Court, that DCS has proven the ground of persistent conditions by clear and convincing evidence.

Finally, having determined that grounds exist for the termination of Mother's and Father's parental rights, we next address the best interest analysis. Both parents have raised the best interest analysis as an issue on appeal and argue that the Juvenile Court erred by determining that it was in the Children's best interest for their respective parental rights to be terminated. Tennessee Code Annotated § 36-1-113(i) provides a set of non-exclusive factors courts are to consider in determining whether termination of parental rights is in a child's best interest:

(i)     In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following

- 22 -

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i) (Supp. 2019).

With regard to making a determination concerning a child's best interest, our Supreme Court has instructed:

> When conducting the best interests analysis, courts must consider nine statutory factors listed in Tennessee Code Annotated section 36-1-113(i). These statutory factors are illustrative, not exclusive, and any party to the termination proceeding is free to offer proof of any other factor relevant to the best interests analysis. *In re Carrington H.*, 483 S.W.3d at 523 (citing *In re Audrey S.*, 182 S.W.3d 838, 878 (Tenn. Ct. App. 2005)). Facts considered in the best interests analysis must be proven by "a preponderance of the evidence, not by clear and convincing evidence." *In re Kaliyah S.*, 455 S.W.3d at 555 (citing *In re Audrey S.*, 182 S.W.3d at 861). "After making the underlying factual findings, the trial court should then consider the combined weight of those facts to determine whether they amount to clear and convincing evidence that termination is in the child's best interest[s]." *Id.* When considering these statutory factors, courts must remember that "[t]he child's best interests [are] viewed from the child's, rather than the parent's, perspective." *In re Audrey S.*, 182 S.W.3d at 878. Indeed, "[a] focus on the perspective of the child is the common theme" evident in all of the statutory factors. *Id.* "[W]hen the best interests of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interests of the child. . . ." Tenn. Code Ann. § 36-1-101(d) (2017).

> Ascertaining a child's best interests involves more than a "rote examination" of the statutory factors. *In re Audrey S.*, 182 S.W.3d at 878. And the best interests analysis consists of more than tallying the number of statutory factors weighing in favor of or against termination. *White v. Moody*, 171 S.W.3d 187, 193-94 (Tenn. Ct. App. 2004). Rather, the facts and circumstances of each unique case dictate how weighty and relevant each statutory factor is in the context of the case. *See In re Audrey S.*, 182 S.W.3d at 878. Simply put, the best interests analysis is and must remain a factually intensive undertaking, so as to ensure that every parent receives individualized consideration before fundamental parental rights are terminated. *In re Carrington H.*, 483 S.W.3d at 523. "[D]epending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis." *In re Audrey S.*, 182 S.W.3d at 878 (citing *White v. Moody*, 171 S.W.3d at 194). But this does not mean that a court is relieved of the obligation of considering all the factors and all the proof. Even if the circumstances of a particular case ultimately result in the court ascribing more weight—even outcome determinative weight—to a particular

statutory factor, the court must consider all of the statutory factors, as well as any other relevant proof any party offers.

*In re Gabriella D.*, 531 S.W.3d 662, 681-82 (Tenn. 2017).

Both parents argue that the Juvenile Court erred by failing to apply a presumption against separating siblings. *See Ray v. Ray*, 83 S.W.3d 726, 738 (Tenn. Ct. App. 2001). This Court has explained that "[t]he preference for keeping siblings together 'is simply a factor for the court to consider in determining the best interest of the child . . . . It is not a controlling factor. Courts have previously separated siblings if separation was in the best interest of the child before the court." *Grigsby v. Alvis-Crawford*, No. W2016-00393-COA-R3-JV, 2017 WL 417221, at *4 (Tenn. Ct. App. Jan. 31, 2017) (quoting *In re S.B.,* No. M1999-00140-COA-R3-CV, 2000 WL 575934, at *5 (Tenn. Ct. App. May 12, 2000)).

We note that the parents failed to raise the Children's placement as an issue at trial for the Juvenile Court to consider. Because the Children's placement in separate foster homes is not included in the non-exclusive list of factors set forth in Tennessee Code Annotated § 36-1-113(i) for the Juvenile Court to consider and the parents failed to raise it at trial, there is little evidence in the record pertaining to the effects of or reasoning behind the placement decision. The mere fact that the Children were in separate foster homes, without more, does not preponderate against the Juvenile Court's findings concerning best interest.

The Juvenile Court considered the factors in Tennessee Code Annotated § 36-1-113(i) in making its decision. Pursuant to factors (1) and (2), the Juvenile Court found that Mother and Father had made no changes to their lifestyles that would allow the Children to be placed into their respective custody, despite "significant services" to assist the family. As relevant to Mother, the Juvenile Court found that she had refused to leave an environment that was unsafe for the Children. As to factor (3), the Juvenile Court found that neither Mother nor Father had maintained consistent visitation with the Children. Ms. Swaney's testimony established that Father had not visited with the Children since November 2017. Additionally, the Juvenile Court found as relevant to factor (5) that the Children had been in foster care for nearly three years and changing caregivers at this point would have a detrimental effect on the Children's psychological welfare and emotional state. Pursuant to factor (7), the Juvenile Court found that Mother had continued her drug use and criminal activity. Upon our review of the record on appeal, we determine that the evidence presented does not preponderate against these findings by the Juvenile Court.

The Juvenile Court further found that as relevant to factor (9), neither Mother nor Father had paid child support for the Children. The evidence in the record supports the Juvenile Court's finding regarding Father's failure to pay child support. As such, we find

and hold, as did the Juvenile Court, that, in consideration of all relevant factors, DCS proved by clear and convincing evidence that the termination of Father's parental rights was in the Children's best interest. However, there was no evidence presented at trial that Mother had failed to support the Children. To the contrary, Ms. Swaney's testimony reflects that she did not know if Mother paid support or whether there was an order requiring her to do so. She also stated that she did not believe Mother owed any support. The testimony in the record preponderates against the Juvenile Court's finding that Mother failed to provide support for the Children. Nonetheless, considering the Juvenile Court's findings as to the remaining factors, which the evidence does not preponderate against, we find and hold, as did the Juvenile Court, that DCS proved by clear and convincing evidence that the termination of Mother's parental rights was in the Children's best interest. We, therefore, affirm the Juvenile Court's judgment terminating Mother's and Father's parental rights to the Children.

## Conclusion

The judgment of the Juvenile Court terminating Mother's and Father's parental rights to the Children is affirmed, as modified. This cause is remanded to the Juvenile Court for collection of the costs assessed below. The costs on appeal are assessed against the appellants, Jennifer G. and Brian B., and their surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE